LEOPOLDO SEVILLA, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, EDWIN MELÉNDEZ GRILLASCA, JUDGE, Respondent; JOAQUÍN SEVILLA, k/a JOAQUÍN ECHEVARRÍA ET AL., Interveners.

No. O-69-238.      Decided October 30, 1970.

*Ernesto Maldonado Pérez* for petitioner. *Juan Castañer Vélez* for interveners.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This appeal involves an action for filiation brought by interveners against petitioner. The question raised before us at this stage of the proceedings is whether or not the trial court erred in denying a motion for summary judgment filed by defendant therein and petitioner herein.

The facts which would be allegedly established by plaintiffs, interveners herein, as a ground for their cause of action, may be summarized as follows.

Ever since before the year 1899, Doroteo Sevilla lived maritally and publicly with Segunda Echevarría until her death, which occurred in 1944. From this union, seven children were born, of which the interveners, Agustín and Joaquín, and petitioner, Leopoldo Sevilla, survive. The other intervener, Clemente Muriel, is the son of Julia, one of the aforementioned seven children of Doroteo Sevilla and Segunda Echevarría. Julia was born in 1896 and predeceased her parents in 1928. Agustín was born in 1899, Joaquín in 1907, and Leopoldo, the youngest of the seven was born in 1910. During the union of Doroteo Sevilla and Segunda Echevarría, she neither had any other husband nor had sexual relations with any other man.

Defendant, as well as plaintiffs, Joaquín and Agustín, and the other children were born and reared in the same home constituted by their parents, Doroteo Sevilla and Segunda Echevarría. Said home was located in a small farm property of the father of the family, Doroteo Sevilla, property which consists of 3.983 cuerdas and is located in ward Juan Domingo of the Municipality of Guaynabo.

At the present time all the persons involved in this litigation live on the same farm, but in separate houses. In the

year 1957, four years after the father died, interveners and petitioner agreed to divide the farm among themselves, as heirs of their father, Doroteo Sevilla. There appears in the record a drawing made by surveyor José C. Font, in which the property appears divided into six small parcels or lots, according to the agreement between the heirs. In said drawing each parcel is identified with numbers 1 to 6, and in the legend of the drawing it is stated that said property belongs to the heirs of Doroteo Sevilla, and the following enumeration is made: (1) Leopoldo Sevilla; (2) Cecilia Sevilla; (3) Agustín Sevilla; (4) Joaquín Sevilla; (5) Trinidad Sevilla; and (6) Matías Muriel. Each parcel was thus adjudicated to said heirs. The drawing is dated December 17, 1957, in Río Piedras and signed by the surveyor. There also appears on record a sworn statement of the surveyor where he states that petitioner Leopoldo Sevilla requested his land surveying services to make said drawing for the purpose of distributing the property between him and his brothers and sisters, as heirs of his father, Doroteo Sevilla. The surveyor states that he had a meeting with defendant Leopoldo and with Joaquín, Agustín, Clemente Muriel, Matías Muriel, Cecilia Sevilla, and Trinidad Echevarría, and that there Leopoldo stated that he wanted to distribute among his brothers and sisters and nephews the corresponding parts of the estate left by their father, Doroteo Sevilla. He states that following the instructions he was given he proceeded to survey the property and to prepare the aforedescribed drawing.

Doroteo died intestate, on October 23, 1953. Plaintiffs continued occupying their parcels, and in the year 1966 the Labrada Construction Corporation brought suit against Etanislao Sevilla, in the Superior Court of Bayamón (CS-66-1655), in connection with a right of way that said corporation needed for the development of Tintillo Gardens Urbanization, which is adjacent to Doroteo Sevilla's property, which is now occupied by his children. As a result of the aforemen-

tioned suit, the Labrada Construction Corporation compensated the heirs of Doroteo Sevilla and defendant Leopoldo Sevilla received the product of said compensation, distributing it between him and his brothers and sisters, as the participation corresponding to them as Doroteo Sevilla's heirs.

Some time prior to the year 1968, Leopoldo Sevilla had knowledge that he, the youngest son, was the only one who appeared acknowledged by his father on his birth certificate. As a consequence thereof, that year he brought suit in the Superior Court, San Juan Part, involving the declaration of heirship, alleging that he was the sole and universal heir of his father, Doroteo Sevilla, and obtained judgment in San Juan declaring him so. He also filed, in the Superior Court, San Juan Part, an action of unlawful detainer at sufferance against one of plaintiffs [interveners] herein, alleging that the latter was occupying a dwelling and lands property of Leopoldo Sevilla, without just title and without any right at law whatsoever. It was then that plaintiffs-interveners, lacking resources, resorted to the Office of Legal Services to defend themselves and to prevent being deprived of what they believe are their own rights. In the year 1970, plaintiffs Agustín and Joaquín Sevilla are 71 and 63 years old, respectively.

Without having answered the complaint in the case at bar, defendant Leopoldo Sevilla filed a motion for summary judgment in the trial court, on the ground that more than 15 years have elapsed since the predecessor in title's death until the filing of the filiation action.

The interveners served interrogatories on defendant, requested permission to amend the complaint and each one of them offered separate sworn statements in opposition to the summary judgment. The interveners also challenge the validity of defendant Leopoldo Sevilla's birth certificate, because they allege that the same states that Doroteo Sevilla could not read or write, and that notwithstanding, the same appears

allegedly signed by Doroteo Sevilla. They also submitted the sworn statement of the surveyor, José C. Font, which contains the aforementioned points.

The trial court did not admit at that time the amended complaint and by its order of October 9, 1969, which is the one challenged by this certiorari, it limited itself to decide the matter of the availability of the summary judgment. The court states in its order that plaintiffs' theory is that the action is not one for the forced acknowledgment of the paternity, but for the judicial declaration of the existence of a voluntary acknowledgment on the part of the father, Doroteo Sevilla, as well as on the part of the defendant brother, Leopoldo Sevilla. They sustain that Leopoldo acknowledged them, accepting that they are full brothers and heirs of their father, Doroteo Sevilla, as shown by the acts of Leopoldo himself in proceeding to divide into parcels the property they inherited from their father to distribute it among themselves, by the act of living together with their parents and brothers and sisters, as such, until they reached adulthood, and by reason that Leopoldo himself shared with plaintiffs the aforementioned compensation received by the heirs of Doroteo Sevilla from the Labrada Construction Corporation. Plaintiffs insisted that this is not a filiation action for acknowledgment, but rather that they request the judicial declaration that they had already been acknowledged by the action of their father and of their brother, the defendant.

By the interrogatory dated July 29, 1969, plaintiffs made a series of questions to defendant Leopoldo Sevilla, which he answered under oath, by answer dated August 19 of the same year. Hereinafter are some of those questions and answers which are pertinent.

Q. 8. "State whether or not it is true that plaintiffs Joaquín Sevilla, Agustín Sevilla, and the mother of Clemente Muriel, Julia Sevilla, lived with you in the same home of Doroteo and Segunda

Sevilla, as children *of Doroteo* and as your brothers and sisters?" (Italics ours.)

A. 8. "Yes, we lived for a time in the manner indicated in the interrogatory."

Q. 9. "Say for how long have you known plaintiffs Joaquín Sevilla, Agustín Sevilla, and Clemente."

A. 9. "Since I was born."

Q. 10. "State whether or not it is true that plaintiffs Joaquín Sevilla, Agustín Sevilla, and Clemente Sevilla live at the present time and have lived for more than 30 years on Doroteo Sevilla's farm in ward Juan Domingo of the municipality of Guaynabo."

A. 10. "Yes; they have lived there since before my father's death and afterwards, without my asking them to abandon the property by reason that they are my half brothers by the same mother. I want to clarify that they have never been known by the surname Sevilla."

.        .        .        .        .        .        .        .

Q. 13. "State whether or not it is true that Doroteo Sevilla always had and publicly accepted that plaintiffs were his children and that he provided food, clothing, and care to them as such children."

A. 13. "Yes."

In view of the aforedescribed situation, the trial court denied the petition for summary judgment filed by defendant, petitioner herein. The only error assigned is that the court erred in so doing.

In the light of the particular circumstances of this case, we consider that the error assigned was not committed. The case will be remanded to the trial court for proper further proceedings.

Mr. Chief Justice Negrón Fernández did not participate herein.